June, 1810.

## Mary Goodwin *against* William Goodwin, jun.

MOTION for a new trial.

This was an action *qui tam* on the statute against fraudulent conveyances, (tit. 76. s. 2.) to recover one year's value of the land, and the whole value of the goods fraudulently conveyed.

The case, as it appeared on the trial, was as follows: *William Goodwin*, father of the defendant, and husband of the plaintiff, entered into a written agreement with the plaintiff to this effect: that whereas they had mutually agreed, for reasons best known to themselves, and the Searcher of Hearts, to separate, and dissolve, as far as in them lay, all the obligations enjoined by the marriage covenant, he would, by the promissory notes and the bond of his son, the defendant, secure to be paid to *Giles Pettibone*, in trust for her, two hundred and fifty dollars, payable in several instalments, with interest, and an annuity of fifteen dollars during her natural life. He also relinquished to her all the property which he had received by her. She, on her part, engaged that she would never be chargeable to him in any manner whatsoever; and then further engaged that on his furnishing money and testimony, she would pursue the proper means to obtain a divorce as soon as practicable; all which should be under his direction, by himself or attorney.

At the close of the agreement it was provided, that in default of the compliance of said *Mary*, on her part, with any of her engagements, the whole settlement, and every obligation given in furtherance thereof, should be void. At the time of entering into this agreement,

interfere with the regular administration of justice.

*Marginal note:* Husband and wife having agreed to separate and dissolve, as far as in them lay, all the obligations of the marriage relation, mutually covenanted, that he would secure a separate maintenance to her through the intervention of a trustee; that she would be no further chargeable to him; and that he, having committed adultery, and having had the venereal disease, would furnish money and testimony for the purpose of procuring a divorce, and she would pursue the proper means to procure one, all which should be under his direction; held that this arrangement was void, its tendency being to impose upon the court, and to interfere with the regular administration of justice.

June, 1810.  there was good cause for a divorce against the husband;

GOODWIN
v.
GOODWIN.

for he had, during the intermarriage, been guilty of the crime of adultery, and had also, several times, had the venereal disease; and the arrangement above stated was made to prevent the plaintiff from proving, on her petition for a divorce, that her husband had so had the venereal disease.  She preferred her petition for a divorce to the superior court; but while the same was pending there, she refused to have it further prosecuted, unless her husband would deliver over to her certain articles of furniture, and also pay her two hundred and fifty dollars, to which he agreed.  The plaintiff then prosecuted her petition, and obtained a decree of divorce; and afterwards refused to accept the furniture and money.  The notes and bond were executed by the defendant in pursuance of the original agreement; and after one or two instalments secured by the notes, and one annuity secured by the bond, had become due, and while they remained unpaid, the defendant conveyed all his property, real and personal, to his father, with intent to defraud the plaintiff of her said debts, due and to become due, and to prevent her trustee from collecting the same for her use and benefit.

On these facts the defendant claimed that the plaintiff had no just debt, and could not support her action.  But the court decided, and instructed the jury, that the debt was good and valid, and that the plaintiff was the aggrieved person, and entitled to recover.

A verdict being found for the plaintiff accordingly, the defendant moved for a new trial, on the ground of a misdirection; and the question was reserved for the consideration of the nine judges.

*Daggett* and *N. Smith*, in support of the motion.

1. It is essential to a recovery in this case, that the plaintiff should have a *debt*, which is endeavoured to be

avoided by the conveyance. Without this, the case is not within the statute. Such conveyances only as are made " to avoid any debt or duty of others," are declared to be void; and no one but the " party grieved" can sue for the penalty. We contend that the claims of *Mary Goodwin* against the defendant did not constitute a *debt.*

First, the notes and bond were without consideration. They were given in pursuance of the agreement between *William Goodwin* and his wife. The agreement and the notes and bond were all parts of the same transaction; and that transaction is upon the record. If there was any consideration, we see what it was. The plaintiff agreed that she would not be further chargeable to her husband; but this would not discharge him from her support. Even a court of chancery in *England* will not decree the performance of a contract by the husband for a separate maintenance, unless the trustee of the wife covenant to indemnify the husband against the wife's debts; there being, without such covenant, no valuable consideration for the contract by the husband. *Newland on Contracts,* 119.

Secondly, this agreement was void, because it was an agreement between husband and wife. By the principles of the common law, as understood in the time of Lord *Coke,* the wife unquestionably has no power to make such an agreement with her husband. *Co. Litt.* 112. a. And how far soever these ancient principles may have been lost sight of in some modern cases, particularly in *Ringstead* v. *Lady Lanesborough, Hil.* 23 *Geo.* III. *Barwell* v. *Brooks, Hil.* 24 *Geo.* III.(a) and *Corbett* v. *Poelnitz,* 1 *Term Rep.* 5. yet they have been recognised in *England* in the more recent case of *Marshall* v. *Rut-*

(a) Reports of these two cases have lately been published by Mr. *Lawes,* in his *Treatise on Pleading in Assumpsit,* p. 552. 560. from very full and accurate notes. *R.*

June, 1810.  *ton*, 8 *Term Rep.* 545. and fully established in this state
by the case of *Dibble* v. *Hutton*, 1 *Day*, 221. The parties
to this action are before a court of *law ;* they stand upon
*legal rights ;* and the principles of the common law must
govern.

Goodwin
v.
Goodwin.

Thirdly, this agreement was void as being opposed to
sound policy. The primary object of the parties was a
separation, and a separate maintenance for the wife. Se-
parate maintenances have not been sanctioned in *En-
gland*, in any form, until lately. They have owed their
existence entirely to the state of society in that country.
But no such reason exists here. Our manners are not
so far changed as to require a subversion of ancient
principles to accommodate them. The marriage relation
is the basis of our happy state of society; but separate
maintenances destroy the benefits of that relation.

Fourthly, this agreement was void as being *contra
bonos mores.* There never was a more corrupt and im-
pious transaction. The parties sit down, and agree to
*dissolve* the marriage relation, and to live in total disre-
gard of the obligations resulting from it. For form's
sake, a petition is to be preferred to the superior court
for a divorce. The steps to be taken by each are agreed
upon. One is to appear as complainant, and the other
as respondent; but the respondent is to furnish money
to carry on the suit, and evidence to support it : nay,
the whole control of the suit is to belong to him. Esta-
blish the position, that husband and wife may lawfully
agree upon a dissolution of their marriage covenant, and
that an arrangement between them for obtaining a divorce
shall be valid, and there will be an end of society.

Fifthly, this agreement was void, as it contemplated
an imposition upon the court. The *truth* was to be
concealed. A divorce was to be obtained by collusion
between the parties.

2. Admitting the original agreement to be valid ; yet
a new one was substituted, upon which the divorce was

obtained; and the conditions of the first agreement were not complied with by the plaintiff. Of course, she has acquired no rights by virtue of it. The new agreement was executed on one part; an execution on the other could, therefore, be enforced. This removes the objection that it was by parol.

3. If the notes and bond are valid, this action belongs to *Giles Pettibone*. He is the obligee; he is the creditor; he has the legal interest; and in an action at law, as this is, the court will regard the person who has the legal interest as the real party, as the person entitled to prosecute.

*Gould*, contra.

1. There was a *debt* due to the plaintiff, which the defendant endeavoured to avoid by the conveyance.

It is unnecessary to go into the learning of the *English* books as to the consideration of an agreement in writing. The contracts in question were promissory notes and a bond, which, in this state, are specialties; and as to them want of consideration cannot be averred.

But here was, in fact, a sufficient consideration. These obligations were given to make provision for a woman in the event of a divorce.

A debt due in equity is, in this case, as available as a debt due at law. The plaintiff clearly had an equitable right to the provision which had been made for her. A court of chancery would compel *Pettibone* to perform his trust. The defendant has defeated the performance of it by his wrongful act. He is, therefore, within the principle of *Storer* v. *Bulkley*, 2 *Day*, 531. which decided that an action at law will lie for the violation of an equitable right.

To the objection that this was an agreement between husband and wife, and therefore void, it is sufficient to reply, that it is not the original agreement, but the notes and the bond, which constitute the debt endeavoured to

June, 1810.

GOODWIN
v.
GOODWIN.

be avoided; and these were not executed between husband and wife.

It is not necessary to question the authority of *Dibble* v. *Hutton*, 1 *Day*, 221. That case did not decide that a *feme covert* cannot hold separate property; though the reasons of the court go that length. She unquestionably may hold as *cestuy que trust ;* and this is sufficient for our purpose.

The original agreement was not opposed to sound policy. It was not an agreement for a dissolution of the marriage relation; but one made in contemplation of a divorce for a sufficient cause.

Does it necessarily appear that this agreement was corrupt? He voluntarily offered to do for her what he ought to have done, and what the court would have compelled him to do. The case states that there was good cause for the divorce. It was not corrupt for him to furnish evidence of it to the court. If it is possible that this transaction should not be corrupt, then it does not appear upon this record to be so.

But supposing the notes and bond to be invalid on any of the grounds urged by the counsel for the defendant; what is that to him? Suppose the defendant had taken away a *usurious* note, would he not be liable for so doing? Would it be a defence for him to say that such note was of no value to the owner?

2. The plaintiff has not lost her claim by failing to perform the conditions of the agreement between her and her husband. She declared that she would proceed no further unless her husband would give her better terms. This declaration was surely no breach of the covenant. She afterwards did proceed, and complied with the condition. Her having simply made a new claim was no forfeiture.

But it is said that the divorce was obtained in pursuance of the new agreement. This does not appear. It is certain that she did perform what the original covenant

required her to do. This covenant remained; nothing was given up; nothing cancelled. Further, the new agreement was by *parol*, and could have no effect.

3. If the plaintiff had a valid debt, which was endeavoured to be avoided by the fraudulent conveyance of the defendant, she is undoubtedly the person aggrieved, and entitled to bring the action; so that it is unnecessary to give the third point made by the defendant's counsel a distinct consideration.

N. SMITH, J. This is an action to recover the penalty of the statute against fraudulent conveyances; alleging that the defendant was indebted to *Giles Pettibone* in several notes of hand, and a bond which *Pettibone* held as trustee to the plaintiff; and that, with a view to cheat and defraud the plaintiff in the collection of those notes and bond, the defendant conveyed to his father all his estate, both real and personal.

It appeared on the trial, that the notes and bond were given on an agreement between *William Goodwin* and *wife*, to live separate. Which sums she accepted in full for her future support, and agreed never to become chargeable to him in any event. A clause is then added, in which she agrees, that, on his furnishing money and testimony, she will pursue the proper means to obtain a divorce as soon as may be; all which shall be under his direction, by himself or attorney. And in default of the compliance of *Mary Goodwin* with any of her engagements, the whole of the settlements and obligations were to be void.

The court decided, and gave in charge to the jury, that the plaintiff had a just and lawful debt against the defendant, and might well support her action, as being an aggrieved person within the meaning of the statute.

To this opinion of the superior court, various objections have been made in the argument. It was insisted, that there is no debt in this case, because the

June, 1810.

GOODWIN
v.
GOODWIN.

June, 1810.

GOODWIN
v.
GOODWIN.

contract on which the notes were given was between a husband and his wife, and is void for want of a contracting power in the wife. But suppose the contract between the husband and wife to be void on this ground, it only serves to show that the notes from the son to *Giles Pettibone* were without consideration. And as our notes are considered to be in the nature of specialties, mere want of consideration cannot be averred.

Again, it was objected that the contract set forth in this case was conditional, and that the plaintiff lost all her right to the benefit of these notes, by a refusal to permit the petition to proceed, until she compelled her husband to make new terms with her. But as the contract between husband and wife was void for want of contracting parties, a failure on her part could render it no more than a nullity, and resolve itself into mere want of consideration for the notes; which, as I have already stated, cannot, in this state, be averred to destroy their validity.

But although mere want of consideration cannot, in this state, be averred to destroy a note of hand, yet it may be averred that a note was given on an illegal contract, and if it appear that the contract in question is an illegal one, and the notes were given in pursuance of it, the circumstance of the wife's having no contracting power will not purge the contract of its impurity.

Notes given to a trustee for the benefit of a *feme covert*, on consideration that she commit a crime, stand on no better ground than if given to any other person, on a similar consideration. What, then, is this contract? And here we discover a provision made for the support of the wife, on condition that she will bring forward a petition for a divorce, to be at the husband's expense, and at his absolute control, or that of his attorney, which is the same thing. A petition is then to be brought, charging the husband with a crime; and he appearing in character of a respondent, in which character his confessions

are all to be taken most strongly against him, and may supply the place of all other testimony; when, in truth and fact, he is substantially the petitioner.

Whatever apology may be made for this contract, it must, from its nature, operate a gross fraud on the court; and if such friendly arrangements are allowed, they must very much interfere with the regular administration of justice.

It is said that here was a good cause for the divorce. Be this as it may, it is perfectly manifest that the fact of this petition being brought forward by the procurement of the respondent, and at his control, was to be concealed from the court; the discovery of which fact would in itself be good ground for dismissing the petition.

It is also perfectly apparent, that the true cause of the divorce, which was thought disgraceful to the party, was to be concealed from the court, and a false one substituted and imposed on the court in its room. But courts of justice ought not to suffer themselves to be thus imposed on by the fraud of parties; they ought to judge upon the real state of facts.

On this ground, therefore, I think a new trial ought to be granted. And it becomes unnecessary for me to determine the general question, whether contracts between husband and wife to live separate, are illegal or not; or whether the present action was properly brought in the name of *Mary Goodwin*, as being the aggrieved person or not.

SWIFT, EDMOND, BRAINERD, and J. C. SMITH, Js. were of the same opinion.

BALDWIN, J. The great question is, whether *Mary Goodwin*, the plaintiff, had such an interest in the debt attempted to be avoided, as will make her, in the sense of the statute, a party grieved.

It is admitted that the notes to *Giles Pettibone* were

given to him in trust for the benefit of the plaintiff. He, of course, had no interest in them; if he recovered them, it was for the benefit of another; if he lost them, he was not at all affected by the loss. If, then, the notes are valid, the *cestuy que trust* has the only substantial interest to be affected by any fraudulent attempt to prevent a recovery. And though between the trustee and the *cestuy que trust*, her rights, if withheld, might be redressed in chancery only; yet the law will not permit an improper interference, to prevent an equitable adjustment, even though it could not be enforced. This was expressly decided in the case of *Storer* v. *Bulkley*, which I consider as a stronger case than this; for the claim of *Storer*, defeated by the act of *Bulkley*, could not be enforced either in law or in equity.

If the interest of the plaintiff in this case is substantial, either in law or in equity, and is defeated by the act of the defendant, it appears clear to me that she is a party grieved within the meaning of the statute. But it is contended, that her trustee has no legal claim, and, of course, that she has neither a legal nor an equitable interest; because the notes originated from an impure contract between husband and wife. I have never considered the case of *Dibble* v. *Hutton*, 1 *Day*, 221. as going so far as to prevent all possible provision, which a husband may be disposed to make for his wife. While such provision rests in contract between husband and wife merely, as that did, I agree it is void; but when made *bona fide*, and fairly executed by the intervention of a trustee, I know of no decision or principle that will set it aside. If the plaintiff's claim in the case before us, rested in contract merely, as did the case of *Dibble* v. *Hutton*, I am ready to say such contract is void. Here, neither the husband or wife are parties in the arrangement; the note is given by the son of the husband, to a trustee, for the benefit of the wife.

I am aware it is contended, that there is a want of con-

sideration for the notes, or that the consideration arises

from an impure and immoral source. I should doubt
whether a mere want of consideration would be a defence
for the defendant; and, I contend, that a suitable provi-
sion for a wife on the event of a divorce for sufficient
cause, is a good and a legal consideration. It is no more
than the law requires the court to give on such an event.
If, then, the provision is made by the husband, fairly,
and on sufficient ground, I cannot say that such an ar-
rangement is in itself void; yet I readily agree that
such arrangements may be made fraudulently, with de-
sign to impose on the court, and obtain a divorce without
cause. That this is so, reliance is placed on that part of
the agreement which required the husband to furnish
proof and money. I cannot concede that this is necessa-
rily evidence of corruption; the wife had no means
separate from the husband; this part of the agreement
is capable of honest explanation, and the *onus probandi*
is on those who claim it to be otherwise. The case has
been tried on the general issue, and nothing of that kind
appears before us. We have, then, the naked question,
whether such a transaction is in itself void.

It is also contended, that these notes are avoided by a
subsequent agreement between the plaintiff and her hus-
band, respecting her alimony. To this I have only to
observe, that I cannot conceive how an unexecuted con-
tract between husband and wife, resting in parol, and
which all parties agree is in itself void, can by any pos-
sibility, make void at law a specialty executed by a third
person.

On the whole, I am of opinion, that though a contract
between husband and wife, respecting her alimony in
case of divorce for his misconduct, cannot be en-
forced against him while resting in contract; yet if made
*bona fide*, and executed by the procurement of the hus-
band, and secured to a trustee for her benefit, it becomes
valid, and may be enforced; and a fraudulent attempt to

June, 1810. avoid the payment of the sum secured, will affect her
interest and entitle her to an action, as the grieved party.
I am therefore opposed to a new trial.

GOODWIN
v.
GOODWIN.

TRUMBULL, J. was of the same opinion.

REEVE, J. I perceive nothing in this case other than
a provision made by a husband for the support of his
wife, in the event of a divorce taking place betwixt them,
which they had in contemplation. Such a provision, I
apprehend, can never be deemed illegal or improper,
provided there was no corrupt design betwixt the parties
to accomplish a divorce by fraud and falsehood. Let it
be supposed that the husband had committed adultery,
and of this there was no doubt; the wife would most
assuredly be justified in obtaining a divorce from her
husband. It would be a lawful act, for a legitimate
cause for obtaining a divorce existed; and if the hus-
band, conscious of having injured his wife by his infi-
delity, should make provision for her, as in this case,
would it not be binding upon him? This cannot be con-
troverted. It would be doing what the law supposes
proper to be done; for, in such case, it is in the power
of the court to assign to the injured wife one third part
of his estate to be her own, as a provision for her main-
tenance. And surely when a man does that which by
law he is compellable to do, he must be bound by it. I
apprehend that the decision in this case has proceeded
upon the supposition that the record shows that there was
an agreement, &c. to procure a divorce by a fraud and im-
position on the law or the court. This question is a
point of fact. It is, I apprehend, impossible to raise it
on this motion. It does not appear that this ground was
ever taken at the trial; and it being a mere matter of
fact, the party should have made the question to the jury.
If it does, I agree that the notes, &c. given in pursuance
of it are not valid. But where is it apparent that there

was any fraud? Is it inferred from the agreement that the husband should furnish the money, and the necessary testimony to obtain a divorce, for his wife? If the necessary construction of such an agreement be, that he was to procure false testimony, and suborn witnesses to prove a falsehood, *viz.* that he had been guilty of adultery, when he had not, and thus impose upon the court, my opinion would coincide with the opinion of the court. To me it appears impossible to say that such is the necessary construction of such an agreement. Such an agreement is perfectly reconcilable with the hypothesis that adultery had been committed by the husband, and that the wife was able to produce that testimony, and that he knew it to be his duty to be at the expense of furnishing the testimony, and, therefore, was willing to do it. It is a much more probable supposition, in my opinion, than that he should be willing, when he knew himself innocent, to blast his own reputation, and that by one of the foulest of crimes, the subornation of perjury. Admitting, then, and I think it must be admitted, that it does not appear upon the record what was in reality the true state of the case, it is not in the power of the court by conjecture to infer any fact. No: it is necessary that the consideration of the notes should appear to be unlawful, or to have been given with a fraudulent object in view. Is it inferred that because the petition for a divorce was to be under the direction of the husband, there was fraud in the transaction? Unless it is a necessary construction that such an agreement must be with a fraudulent view, the court cannot make such inference. To justify the conclusion it must be a fraud *per se.* I conceive that this might be done without any such intention. Suppose the fact to be, as was testified by the witnesses, that the husband had been guilty of adultery, and had also several times had the venereal disease during the intermarriage, would it not account for this transaction? The object being a divorce, which

June, 1810.

GOODWIN
v.
GOODWIN.

was a lawful object, might not the husband, knowing that the wife would prefer a bill for a divorce, and knowing that she could prove the fact of adultery, and under the aggravated scandal of having had that disgraceful disease, be desirous of avoiding the increased shame, and have it in his power to produce no further evidence of his baseness than what was necessary to attain the object of a divorce? And might not a wife consent to this? Surely she might, unless it was her duty to produce all the evidence that existed of his shameful infidelity to her. If this might be the case, and especially when it is rendered probable by the testimony given, there is no foundation laid by the record to conclude that there was any fraud contemplated betwixt the husband and wife. It is not enough to say, that there may be fraud in such transaction, and the court may be imposed on. In order to justify the advising to a new trial, it must appear that there was fraud, and that the court was imposed upon.

There is, it seems, a part of the agreement, which I have not noticed, which is deemed peculiarly offensive and immoral; that is, the agreement to live separate, and dissolve, as much as in them lies, all the obligations of the marriage covenant, and that, for reasons best known to themselves and the Searcher of Hearts. It is apparent the manner in which they meant to dissolve the obligations of the marriage covenant, viz. by obtaining a divorce for adultery, which is a legal act; and if this was not what was meant, it is no part of the consideration on which these notes were given. It may be wished to attempt to dissolve the obligations of the marriage covenant; but this has not the least connexion with a note or bond that was given to take effect upon the contingency of a divorce. The same observations are applicable to the agreement to live separately.

But admitting that this was a consideration for giving the notes, it must appear to the court that there is no such thing as a husband and wife agreeing to live sepa-

rate, and that agreement be a lawful one. Without re-
sorting to the host of *English* authorities which sanction
such agreements, and give complete effect to all the ar-
rangements made under them, I think no man will say
that it would be thought that any turpitude was attached
to such an agreement, if the husband had the venereal
disease, or if the wife had been guilty of infidelity to
her husband. Shall the wife in the one case, and the
husband in the other, not be justified in living separate?
And what one might lawfully do, might not both agree
should be done? How, then, does this court know that
this agreement is illegal? What led to it we are not
told, only that the reasons are best known to themselves
and the Searcher of Hearts.

I know that it has been contended in this case, that
there was no debt, because the agreement was betwixt
husband and wife, and, therefore, the notes were void.
Admitting that all agreements betwixt husband and wife
are void, the admission is for argument's sake only; for
I believe the doctrine to be not only ridiculous in the
extreme, but opposed to the laws of the land, and de-
structive of the welfare of society, of a baneful and im-
moral tendency; yet it does not follow that the notes
given to a third person for the benefit of his wife, on the
happening of a certain contingency, are void. The case,
on that hypothesis, is this: there never was any agree-
ment betwixt husband and wife, for by law there could
be none, and the husband then voluntarily makes a pro-
vision for her by a contract executed to a third person as
trustee for her. It can never be averred that there was
no debt; for a want of consideration can never, by the
rules of law, be shown in such a case. Such transac-
tion is always binding upon the promissor, and never
could be avoided by him, however it might by creditors.
Unless it can be shown to be immoral for a husband to
provide for the maintenance of a wife, in case she should
be divorced from him for his adultery, and that in a way

June, 1810.

GOODWIN
*v.*
GOODWIN.

June, 1810. entirely consistent with the rules of law, by a contract
not with her but with a third person for her benefit, the
GOODWIN
v.
GOODWIN.

It has been urged that the debt, if any, was due to
*Giles Pettibone ;* and, of course, he, and not the plaintiff,
was the person grieved, to whom the action by law is
given. As I do not apprehend that this consideration
had much weight in the decision, I shall only observe,
that *Giles Pettibone* had no beneficial interest in the sub-
ject whatever, and, therefore, could not be the person
grieved ; and the plaintiff, who was entitled to the whole
beneficial interest, was grieved, and the only person who
was ; and it is now settled that the violation of an equi-
table right may be the ground of an action at law.

It has been further urged, that this contract was in-
tended by the parties to operate if no divorce had ever
taken place, and that a married woman can hold no sepa-
rate property given in trust for her, either in law or
equity, and that no debt could be raised to her separate
use, and her husband, of course, was the *cestuy que trust;*
that the case of *Hutton* v. *Dibble* recognises this doc-
trine. To this I answer, if it does, the opinion was an
*obiter* opinion, and nowise necessary to determine that
case. Nothing can be clearer than that such an opinion
is opposed to all authority, and never was law, unless
that decision has made it so.

But admitting this to be the case, that a wife can have
no separate property, and that our books on this subject
are to be given to the winds, yet it cannot have the
smallest operation on the case ; for surely the husband
cannot be the *cestuy que trust'*; to suppose it would be a
violation of all principle. Let the doctrine be, that a
wife can hold no separate property. *A.* conveys property
to *B.* in trust for *C.*, the wife of *D.*, to her sole and sepa-
rate use, over which property the conveyance declares
that *D.*, the husband, shall have no control. Suppose *B.*
is not bound to execute this trust for *C.*, because *C.* is

1

not a person who in law could compel an execution of it, and thus the intention of granting be frustrated, because he intended that *C.* should hold it for her separate use, does it follow that *B.* is trustee for *D.*, the husband? This would be monstrous; for this would not barely disappoint the intention of the grantor, but would, in violation of every principle of construction of a conveyance, and in direct opposition of the grantor's intention, convey the beneficial provision of the grant to the very person to whom the grantor never intended that it should go. This idea must be abandoned; and the most which can be made out of such a transaction is, that *B.*, the grantee of the legal title, could not be compelled to fulfil the trust to *C.* But suppose he should fulfil it. May he not if he chooses? And is the note or bond given by *A.* to *B.* void, because *C.* could not compel a fulfilment of the trust? Say it is a voluntary bond by *A.* to *B.* for a special purpose, not an unlawful one, but such a one as that the person intended to be benefited could not compel the performance of it by *B.*, and *B.* sues *A.*, who pleads in bar that *B.* was not compellable to perform the trust; on a demurrer, could this avail *A.?* Has not *B.* the legal title? And who can say that he he will not perform the trust honestly?

The truth is, such a defence does not lie in the mouth of the promissor. It is nothing to him. The defendant's argument would be the same, if *Giles Pettibone* had holden notes against a minor, and he, the defendant, had robbed him of them, or swindled them from him; for, says he, I have done you no harm; you could not have enforced your notes, if I had not swindled you.

MITCHELL, Ch. J. was of the same opinion.

New trial to be granted.