ESTATE OF W. T. RICHARDSON, DECEASED.

APPEAL BY MATILDA RICHARDSON FROM THE ORPHANS'
COURT OF PHILADELPHIA COUNTY.

Argued January 28, 1890—Decided February 17, 1890.

Where a decree of divorce absolute was entered in a foreign jurisdiction,
at the suit of the husband, and the wife subsequently married and never
after made claim upon her first husband, who himself subsequently
twice married without objection on her part, she is estopped from claim-
ing as his widow on the distribution of his estate, although the decree of
divorce might have been avoided at the proper time on her application.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 32 July Term 1889, Sup. Ct.; court below, No. 34 Octo-
ber Term 1888, O. C.

On January 11, 1889, the account of Louisa S. Richardson,
widow and administratrix of William T. Richardson, deceased,
was called for audit before ASHMAN, J. Mrs. Matilda Rich-
ardson appeared by counsel claiming as widow of the decedent.

The essential facts, as found by the auditing judge, were as
follows:

William T. Richardson was married to Matilda Little on
November 22, 1849, and had two children by her. On April
13, 1857, they separated, and subsequently the husband insti-
tuted proceedings in this state for a divorce, which was refused
in 1859. In 1860, the husband, then residing in Indiana, ob-
tained a decree of divorce by a proceeding in the courts of that
state upon substantially the same grounds he had alleged in
his proceedings in this state. In 1861, he married Sarah P.
Walter, by whom he had three children and who died in 1880;
and in 1881 he married Louisa S., the accountant, and lived
with her till the time of his death. In the meantime, Matilda
Richardson, the divorced wife, was married to James Arnitt,
from whom she afterwards separated.

The auditing judge, citing Fera v. Fera, 98 Mass. 155; Brown
v. Brown, 37 N. H. 536; Slade v. Slade, 58 Me. 157; Vinsant

v. Vinsant, 49 Ia. 639; Thurston v. Thurston, 99 Mass. 39; Bickford v. Cooper, 41 Pa. 142; Ex parte Adamson, L. R. 8 Ch. 817; Cairncross v. Lorimer, 3 MacQ. H. L. 829; Shryock v. Buckman, 121 Pa. 248, ruled that the claimant's demand should be dismissed, and reported a distribution accordingly.

To this adjudication, the claimant filed exceptions. The exceptions having been argued before the court in banc, on March 30, 1889, they were dismissed, opinion by PENROSE, J.:

A claim to take against the will of an alleged husband, by one who during a period of more than a quarter of a century preceding his death not only did not assert herself to be his wife, but acted in a manner utterly inconsistent with the existence of such a relation, does not come before the court with anything to commend it to favorable consideration, and the presumptions are all adverse to its allowance. It is true, that about forty years ago, the claimant, after separating from a former husband, married the decedent, then a boy some sixteen years of age, and it must now be presumed that the first husband was dead, or at least, believed so to be; but the fact that after 1860, though, as she asserts, in great want, she made no demand whatever upon the decedent as husband, and that, with full knowledge, she acquiesced in his marriage in the following year to another woman, with no intimation of its invalidity, then or during the twenty years or more of its continuance, gives rise to a strong presumption that her own marriage to him had either been annulled, or that it had been discovered never to have had a legal existence. And when it further appears that after having thus permitted him to be accredited in the eyes of the community, she again stood by in silence when, after the death of his first wife, the mother of three of his children, he married the lady who, after living with him for the last six years of his life, now survives as his widow, the presumption against her acquires great additional strength, if indeed it does not become conclusive.

If this were all, it would not be easy to conceive of a case to which the doctrine of estoppel could be applied with greater justice; but there is much more. Eighteen years before the death of the decedent, and twelve years before the marriage last referred to, the claimant was herself solemnly married to

Opinion of Court below.

another man who was living when the decedent died; and, in order to sustain her claim against the estate of the latter, she must prove the illegality of this marriage and show that she deliberately committed the crime of bigamy. This is forbidden by every principle, not only of law and equity, but of good morals and common decency; and she is estopped from alleging the continuance of the former coverture, where the effect is to invalidate the later one. A right cannot be established by setting up the turpitude of the person claiming it.

It is far from clear, as a matter of fact, that the husband from whom she had separated was dead when she married the decedent. When first examined as a witness in the case, she sought to convey the impression that she had always lived with him and that she had personal knowledge of his death. She said that he had died " out in the country . . . . . between Chestertown and a place called Blackstone Cross-roads," and that he was buried in a field in Maryland, used by all the neighborhood as a cemetery; that he was buried there, though he died in Delaware, because it " was the nearest burying ground," and that it took her about " a couple of hours " to go from where she lived at the time of his death to this place. She gave the name of the undertaker who officiated at the funeral, adding that he was dead, and that she did not know of any person now living who had any knowledge on the subject. In answer to the question by her counsel, How long did you live with him ? she replied : " A year and six months, and then I went to live out because he was dead." After his death, she said, she went to Wilmington, remaining there eight years and then coming to Philadelphia.

In all of this, as her cross-examination on a subsequent day shows, were both suggestio falsi and suppressio veri. She had separated from him while he lived, and had gone to reside with her mother on a farm in the country. She was not at his funeral, and had only heard of his death from other persons, not one of whom she could designate. A certificate given by the superintendent of the New Castle almshouse, setting forth that a man bearing the name which she had stated to be that of her first husband, was admitted to that institution in October, 1844, and died there of consumption in January, 1845, was offered in evidence on her behalf, but it was quite clear, if her

testimony is true, that he died " out in the country, somewhere between Chestertown and a place called Blackstone Cross-roads," and that her husband could not have been this man. Neither she nor any one of the witnesses speaks of his having died in the poor-house ; nor does she suggest that their separation was caused by his ill-health.   The contradictory character of her testimony upon this point tends to discredit the claim altogether.   Allegans contraria non est audiendus.   If after her marriage to the decedent the first husband was found to be still living, her subsequent conduct is at once accounted for.

The decedent seems, however, to have believed that the first husband was dead, and under this supposition obtained the divorce referred to in the adjudication.   It is a mistake to say that this divorce was void because granted by a court in Indiana, and because a divorce on similar grounds had been refused in Pennsylvania under the statutes of that state.   The Indiana court had unquestioned jurisdiction of the subject-matter with regard to which it acted, and it is not to be presumed that its jurisdiction was fraudulently invoked.   The parties were originally residents of Delaware, and the decedent subsequently acquired a domicile in Indiana.   The court there could not take judicial notice of the decree in Pennsylvania, and, unless it were pleaded or given in evidence, it could have no effect whatever. The judgment in Indiana was, therefore, not void, but merely voidable, binding until reversed, especially if, as must now be assumed to have been the case, actual notice was given to the defendant : Pennoyer v. Neff, 95 U. S. 714 ; Herman on Estoppel, § 531 ; Bishop on Mar. and Div., §§ 163, 199 ; Stewart on Mar. and Div., § 201 ; and the defendant, after having acted in a way which would have been illegal but for the divorce so granted, cannot now, after this lapse of time and after the death of the opposing party, deny its validity or assert that it was obtained without due notice : Browne v. Simpson, 9 B. Mon. 454 ; Gaines v. Gaines, 9 B. Mon. 295 (48 Am. Dec. 425) ; Stephens v. Stephens, 51 Ind. 542 ; Stewart on Mar. and Div., § 416–19.   See, also, as to " void " and " voidable " acts, and the inaccurate use of the former term in statutes, decisions and text-books : Pearsoll v. Chapin, 44 Pa. 9 ; Negley v. Lindsay, 67 Pa. 217 ; Lyon v. Phillips, 106 Pa. 57.

Upon what is said with so much force by the auditing judge,

and upon the authorities and principles referred to by him and by counsel opposing the claim, the exceptions are dismissed and the adjudication confirmed absolutely.

—Thereupon the exceptant took this appeal, assigning the decree dismissing her exceptions and confirming the adjudication as error.

*Mr. J. Howard Gendell* (with him *M. John M. Campbell* and *Mr. A. A. Hirst*), for the appellant.

Counsel cited: Dorsey v. Dorsey, 7 W. 349; Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308; VanStorch v. Griffin, 71 Pa. 240; Platt's App., 80 Pa. 501; Steel v. Smith, 7 W. & S. 447; Story on Conf. of L., § 20; Cheely v. Clayton, 110 U. S. 701; Barrett v. Failing, 111 U. S. 523; Bigelow on Estoppel, 48; McKee v. McKee, 14 Pa. 236; Wall v. Wall, 123 Pa. 545; Keen v. Coleman, 39 Pa. 299; Keen v. Hartman, 48 Pa. 497.

*Mr. George H. Earle, Jr.*, and *Mr. Richard P. White*, for the appellees, were not heard.

The brief filed cited, inter alia: Huffman v. Stiger, 1 Pittsb. 185; Potts v. Potts, 10 W. N. 102; 2 Bish., M. & D., ch. 9; Ripple v. Ripple, 1 R. 388; Foulk v. Brown, 2 W. 215; Biddle v. Bank, 109 Pa. 357; Hayes' App., 113 Pa. 385; Maulfair's App., 110 Pa. 402; Fidelity Co.'s App., 115 Pa. 157; Baily v. Baily, 44 Pa. 274.

PER CURIAM:

This case is affirmed upon the opinion of the learned judge of the Orphans' Court upon the exceptions.

Decree affirmed and the appeal dismissed at the costs of the appellants.