## Graver Estate

*Bernard B. Naef*, for accountants.

*O. J. Tallman* and *Boyd H. Walker*, for petitioner.

*Robert B. Doll*, for residuary legatees.

GEARHART, P. J., June 24, 1952.—Decedent, Ida M. Langenbach Graver, died testate on November 23, 1950. Her will, dated April 28, 1948, was duly probated before the register of wills of this county on December 11, 1950.

Thomas G. Graver has filed an election to take against the will. The personal representatives of

decedent and the heirs oppose the election and contend that because of his conduct, Thomas G. Graver has forfeited all his rights in decedent's estate. Section 9(a) of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.9 provides:

"(a) By Husband. A husband, who for one year or upwards previous to the death of his wife, shall have wilfully neglected or refused to provide for her, or who for that period or upwards shall have wilfully and maliciously deserted her, shall have no right of election".

The matter was heard on the occasion of the audit of the account of the executors. From the record produced we find that decedent and Thomas G. Graver were married on September 1, 1923, and lived together as husband and wife until November 1929, at which time the husband left the common domicile located in Allentown, Pa. The parties never resumed the marital relationship.

One who seeks to set aside the spouse's election to take against the will on the ground of desertion has the burden of proving the desertion: Jac Estate, 355 Pa. 137, 142. The desertion of a spouse without cause or consent will be presumed to be wilful and malicious, within the meaning of the act of assembly: Phillips' Estate, 271 Pa. 129. However, when it is shown that the husband withdrew from the common domicile, the duty devolves on him to show that his leaving was not a wilful and malicious desertion: Heath Estate, 156 Pa. Superior Ct. 597, 600; Archer's Estate, 363 Pa. 534, 536. The justification for his leaving, as was held in Jac Estate, supra, 137, 143, ". . . would have to be found in a cause sufficient to entitle her (him) to obtain a divorce". See also Nixon's Estate, 104 Pa. Superior Ct. 506, 511; Hahn v. Bealor, 132 Pa. 242, 256.

While the burden was on claimant-husband to justify his leaving, the heirs in support of their allegation

that claimant deserted decedent, offered into evidence the record as found in the Court of Quarter Sessions of Lehigh County, January sessions, 1930, no. 24A, Commonwealth v. Thomas G. Graver. The record shows that on January 10, 1930, decedent swore to an information charging her husband with desertion and nonsupport. The case was heard by the late Judge Iobst, who on March 10, 1930, ordered claimant to pay the sum of $7.50 per week for the support of his wife and gave to decedent the right to remain in the property at 1840 Woodlawn Street; "defendant to take care of taxes, electric bills and insurance".

The record of the quarter sessions court was properly received. While it is not conclusive evidence of the desertion by the husband, it is persuasive of the fact: Hahn v. Bealor, supra, 242; Estate of A. S. Mehaffey, 102 Pa. Superior Ct. 228, 234; Phillips' Estate, supra, 129.

The record further reveals that claimant 14 days later started a divorce action in Northampton County against decedent, which divorce action was dismissed on or about January 20, 1936. It was only after an order of publication was entered that decedent discovered that a divorce proceeding had been instituted against her. It was then that she entered her appearance and filed an answer, which later led to the dismissal of the divorce action.

In the instant case the husband has not carried his burden. He has not endeavored to present any evidence which would justify his leaving. Indeed, he has not taken the stand and given any explanation of why he left the common domicile and remained away for 21 years preceding decedent's death. Under the decisions it was his duty to justify his leaving. We therefore find that Thomas G. Graver wilfully and maliciously deserted decedent from November 1929 until the time

of her death. Therefore, he has no right of election to take against testatrix's will.

Following the dismissal of the divorce action in Northampton County, claimant on or about November 14, 1936, instituted proceedings in divorce in Reno, Nev., against decedent and obtained a divorce there. The parties were married in Pennsylvania; decedent never lived in Nevada. It would be superfluous for us to detail the entire record. From the record it is evident that from the time Judge Iobst entered an order against claimant in March 1930 down to July 19, 1937, claimant did everything in his power to avoid payment and to harass decedent in her attempt to gain support. It is clearly evident from all this that the relationship between claimant and decedent was openly hostile.

Following the divorce claimant appeared before Judge Henninger in the domestic relations court in July 1937 and pleaded the Nevada divorce as an objection to further payment on account of the nonsupport order of the local court. Mr. Coleman, who represented claimant at that hearing, testified that he had interposed this defense on behalf of his client, and that the court gave no recognition to the Nevada divorce, and as a consequence refused to vacate the then existing support order. No appeal was taken from the decision and from that time claimant complied with the order of support.

Claimant, recognizing the anomalous situation in which he finds himself by reason of the Nevada divorce, now comes into court and says that the divorce was invalid because decedent did not personally appear nor was she represented by counsel in the divorce proceedings in Nevada.

In Romanski Estate, 354 Pa. 261,, Mr. Justice Allen M. Stearne, writing the opinion for the Supreme Court,

reviews the question of invalid foreign divorce decrees as it pertains to the right of the party who procured the divorce, to repudiate it. The Supreme Court there stated among other things, page 263:

"It was decided that where a spouse invokes the jurisdiction of a foreign court he or she will not be heard to repudiate the judgment rendered in his or her favor *where only the property rights arising out of the marriage are involved,* but there is no estoppel in a 'matrimonial action' . . . Pennsylvania adopted (not in the same language) this doctrine as early as 1929. . . . But where the litigation relates solely to marital property rights, and does not concern subsisting marital status, the Commonwealth is not regarded as an interested party. In such purely personal financial disputes, we have held that a libellant is barred from attacking the validity of a foreign divorce which he or she procured: Miltimore v. Miltimore et al., 40 Pa. 151; Richardson's Estate, 132 Pa. 292, 19 A. 82; Limber's Estate, 284 Pa. 346, 131 A. 244."

Claimant concedes that the general rule is that where a spouse invokes the jurisdiction of a foreign court, he or she will not be heard to repudiate the judgment rendered in his or her favor where only property rights arising out of the marriage are involved: Romanski Estate, supra, 261; Charlesworth's Estate, 24 Lehigh 221; see also 175 A. L. R. 539.

However, claimant argues that this rule of estoppel is not applicable here. He contends that because the question of the Nevada divorce was raised before the local court in the nonsupport action in 1937, and since the court refused to recognize the validity of the Nevada divorce and vacate the support order, the general rule of estoppel does not apply; this for the reason that from that day forward, to the date of decedent's death, he complied with the court order of support.

The application of the estoppel principle is basically equitable; in reviewing the facts of this case it appears from the records of the domestic relations court of this county that claimant did everything within his power to sever the relationship between himself and decedent. More than that, he was almost contumacious of the orders of the court, and it appears he lost no opportunity to harass and embarrass decedent by various maneuvers. Indeed, it was necessary to issue a number of attachments against him compelling him to comply with the court order of support.

Under these circumstances, we rule that the general rule enunciated in Romanski Estate, supra, is applicable. The action before us relates solely to property rights. It does not in any wise concern the marital status which might affect the legitimacy of children or other parties who innocently relied on the invalid decree: A. L. I. Restatement of the Law of Conflict of Laws, §112, illustration 2; 17 Am. Jur. 575; Freedman, Law of Marriage and Divorce in Pennsylvania, page 1543. Claimant cannot now, in this action dealing with property rights, question the Nevada decree which he himself obtained. (See also University of Pennsylvania Law Review, vol. 92, page 429; Richardson's Estate, 132 Pa. 292.)

Our decision on the question of desertion and the question of estoppel with respect to the Nevada decree makes it unnecessary to decide whether money paid the wife for support under the whip of the law is "providing" for her within the meaning of section 9(a) of the Act of April 24, 1947, P. L. 89, 20 PS §180.9. It is not required that the heirs show both desertion and nonsupport; a showing of one or the other is sufficient: Nixon's Estate, 104 Pa. Superior Ct. 506; McLiesh Estate, 161 Pa. Superior Ct. 292, 295; Buckley Estate, 348 Pa. 311.

Accordingly, the election to take against the will by Thomas G. Graver is stricken off, and claimant is not entitled to share in the estate of decedent. The account is confirmed and the proposed schedule of distribution is approved; the accountants are directed to make distribution as therein set forth.