## H. A. BEALOR, EXECR., v. J. M. HAHN.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 18, 1887—Decided October 3, 1887.

1. When, to an action of ejectment by a husband claiming as tenant by the curtesy, the defence is made that he had wilfully and maliciously deserted his wife and had thus forfeited his right under the act of May 4, 1855, P. L. 430, the desertion having been shown, it is presumed to have been wilful and malicious, and the burden is upon the plaintiff to show that he had reasonable and lawful cause for it.

2. In such a cause, the record of proceedings in the Quarter Sessions resulting in an order of maintenance, is admissible as pertinent evidence, not only of the fact of desertion, but that the defendant had failed voluntarily to provide for the support of his wife.

3. In such a cause, the declarations of the wife and her manifestations of sorrow immediately after the abandonment, are admissible in evidence as part of the res gestæ.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 263 January Term 1887, Sup. Ct.; court below, No. 14 September Term 1885.

The suit below was an ejectment brought September 7, 1885, by Jeremiah M. Hahn against H. A. Bealor, executor of the

will of Rebecca Hahn, deceased, to recover a lot and dwelling thereon in the borough of Manheim.

On the trial, the plaintiff proved title in Rebecca Hahn by deed from John Bealor dated December 8, 1873; that the plaintiff was the husband of said Rebecca Hahn who died seized and testate January 2, 1885; and that letters testamentary on January 8, 1885, were granted to the defendant, who was in possession; plaintiff rested.

For the defendant in chief:

By Mr. Brosius: I offer in evidence the last will and testament of Rebecca Hahn. Objected to, because: (1) That no matter what disposition she may have made of her property by her last will and testament, it cannot affect the right of her husband to recover in this action, brought by him to establish his possession under the tenancy by the curtesy. (2) If the court will examine, it will appear that there are certain declarations contained in the will. An admission of the will in evidence would be practically allowing the wife to testify against her husband.

By Mr. Brosius: We offer the will to show that she exercised the legal right to dispose of her property, and that right is absolute and incontestable, save by him. That right to contest the will he may have waived.

Objection sustained; exception.[1]

Evidence was then adduced that the plaintiff left his wife in the spring of 1883, and boarded with his daughter-in-law:

The defendant's counsel now offers in evidence the record of the Court of Quarter Sessions, in the wife's complaint of desertion against her husband, and the decree of said court, to wit:

September 6, 1884. Upon hearing the evidence, the court order and direct the defendant to pay costs of prosecution, pay his wife, Rebecca Hahn, the sum of $7.00 per week for maintenance of herself, until further ordered by the court, enter into recognizance with security in the sum of $400 for the faithful performance of this order and stand committed until this order is complied with.

Objected to. Objection sustained; exception.[2]

Mrs. Elmira Gipple having testified that in 1883 she lived near Mr. and Mrs. Hahn and that at the time her husband left her Mrs. Hahn came into witness's house:

Charge of Court below.

By Mr. Brosius: I offer to prove that she came over there crying and complaining that her husband had left her—to show want of consent on her part. Objected to.

Objection sustained; exception.[3]

In plaintiffs' rebuttal case it was shown that there was an election on the part of the plaintiff not to take under his wife's will.

The court, D. W. PATTERSON, J., charged the jury, inter alia: That the plaintiff was entitled to recover possession of the property in dispute as tenant by the curtesy unless he was affected by the provisions of § 5 of the act of May 4, 1855, P. L. 430; and, as it was not shown that the husband had not maintained his wife, but it was claimed that he had deserted her for more than one year prior to her death, the burden of proof was on the defendant that the desertion was wilful and malicious; and proceeded:—That should be made, however, to appear clearly by the proof. You cannot find it from mere supposition; you must find it from the evidence in the case. The court can see little or no proof of a wilful and malicious desertion. And that question, we think, we must leave to you. It lies on the defendant to make that clearly appear by evidence. If it does not so appear to your satisfaction, then you must find a verdict in favor of the plaintiff, the husband. The whole case turns on that question. It is not contended that the plaintiff did not provide for his wife; and on that ground the defendant has no defence to this action. Did he wilfully and maliciously desert her? Has the defendant made that out to your satisfaction, or to the satisfaction of the court? We have said that it appears to the court that the testimony does not come up to the requirements of the law. [And hence, we feel justified in instructing you to find your verdict in favor of the plaintiff, with six cents damages and six cents cost.] [5]—

The verdict of the jury was for the plaintiff, and judgment being entered, the defendant then took this writ, assigning for error:

1–3. The rejection of defendant's offers.[1][2][3]

5. The part of the charge embraced in [ ] [5]

*Mr. Marriott Brosius*, for the plaintiff in error:

If there was any evidence justifying an inference of the disputed fact upon which the defendant's cause depended, it should have been submitted to the jury; and in measuring the defendant's evidence, we must include all that was offered and improperly rejected: Hill v. Trust Co., 108 Pa. 1.

1. The record of the desertion case was admissible: Bauder's App., 115 Pa. 480; Bunnell v. Smith, 8 W. N. 352; Moninger v. Ritner, 104 Pa. 298.

2. The rejection of the offer to show the acts and declarations of the wife at the time her husband left her, deprived us of the most natural and satisfactory proof, possible, of the absence of any consent on the part of the wife to her husband's departure—the natural expression of her emotion at the very time. The admission of such evidence is justified on the ground of necessity and as part of the res gestæ: Lichtenwallner v. Laubach, 105 Pa. 366; Cattison v. Cattison, 22 Pa. 275; Gilchrist v. Bale, 8 W. 355; Thompkins v. Saltmarsh, 14 S. & R. 275; 1 Greenl. Ev. § 102; Elkins v. McKean, 79 Pa. 493.

3. Under the act of 1855, a forfeiture results from either of two acts; a wilful neglect or refusal for one year or upwards, previous to her death, to provide for his wife, or, a wilful and malicious desertion of his wife for the same period: Little's Est., 7 Phila. 495. Wilful absence is presumed to be malicious: Clark v. Clark, 2 Ch. Co. 38; McClurg's App., 66 Pa. 366; Ingersoll v. Ingersoll, 49 Pa. 249; Odiorne's App., 54 Pa. 175; Platt's App., 2 W. N. 501; Berner v. Dunlap, 94 Pa. 329; Terry's App., 55 Pa. 344. Nothing less will justify a husband's separation from his wife without her consent, than that which would be for him a sufficient ground of divorce: Eshbach v. Eshbach, 23 Pa. 345; Grove's App., 37 Pa. 443; Gordon v. Gordon, 48 Pa. 226; Miles v. Miles, 76 Pa. 357; Jones v. Jones, 66 Pa. 494; May v. May, 62 Pa. 206; Richards v. Richards, 37 Pa. 225.

*Mr. J. Hay Brown*, for the defendant in error:

1. There is nothing in the record offered to indicate why the court ordered Mr. Hahn to pay his wife $7 per week; and, as the desertion must be affirmatively proven in this case, it cannot be inferred from the record in another proceeding which does not show it to have been established.

2. The refusal to allow the offer embraced in the third assignment was proper, because the offer, if admitted, would not have shown whether the desertion was wilful and malicious, or justifiable.

3. The burden of proving that the husband's desertion was without cause, wilful and malicious, was upon the party charging it; the law presumes innocence: Little's Est., 7 Phila. 495; Charleton's Est., 3 W. N. 305.

OPINION, MR. CHIEF JUSTICE GORDON:

This is an action brought by a husband to enforce his right of curtesy in the estate of his deceased wife. The defence was that he had forfeited this right in consequence of a violation of the conditions of the act of May 5, 1855, by his wilful and malicious desertion of his wife for the period of one year or more previous to her death. That there was such a desertion seems, from the evidence, very clear. The court however ruled that proof of wilful desertion was not enough, but that on the defence lay the burden of establishing that it was also in fact malicious, and, conceiving that there was a failure in this part of the defendant's case, directed a verdict for the plaintiff. That this was a mistake we have no doubt. If malice is not to be inferred from the commission of an unlawful act, its proof would often be difficult, and sometimes impossible. It would certainly be an astounding proposition that, where one man had unlawfully and deliberately killed another, malice was not to be presumed from the act itself.

But, as to the question in hand, we are not without authority in point. In Ingersoll v. Ingersoll, 49 Pa. 249, in defining wilful and malicious desertion in cases of divorce, we held that "the guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other." The same doctrine was also held in McClurg's App., 66 Pa. 366. It follows, that the case should have been given to the jury with instruction that if they found there was a wilful desertion by the plaintiff of his wife, Rebecca, for the period of one year or more immediately preceding her death, malice must be presumed; and that the burden of proof was thereby thrown on him to show that he had reasonable and lawful cause for such desertion.

So, it was also error not to admit the proceedings in the Quarter Sessions which resulted in an order on him for her maintenance. They were pertinent to show, not only the fact of desertion but that he had failed to voluntarily provide for her support. The order was the judgment of a court of competent jurisdiction, in a case between the same parties, and embracing the same subject of complaint; hence, was relevant to the controversy in hand. Nor can we see why the offer covered by the third assignment was not admissible. Clearly, her declarations and manifestations of sorrow, immediately after his abandonment of her, were properly introduced as part of the res gestæ; and if authority is wanting, on a point so obvious, it may be found in Cattison v. Cattison, 22 Pa. 275.

The judgment is reversed and a new venire ordered.