## J. M. HAHN v. H. A. BEALOR, EXR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LANCASTER COUNTY.

Argued May 21, 1889—Decided February 10, 1890.
[To be reported.]

1. When the issue is whether a husband has cause for leaving his wife, declarations made by her, or manifestations of a distressed condition of mind, a week after his departure, cannot be regarded as part of the res gestæ, and are not admissible in evidence.
2. In an action by a surviving husband, claiming an estate by the curtesy in land of which his wife died seised, the record of an order in the

Statement of Facts.

Court of Quarter Sessions, adjudging him, on complaint of the wife, to pay her a weekly allowance for maintenance, is evidence persuasive of a prior wilful desertion by him, but not conclusive thereof.

3. When it is shown that a husband who claims a curtesy estate in land of his deceased wife, deserted her for more than a year previous to her death, it is incumbent upon him to show that he had reasonable and lawful cause for such desertion; until he does so, it is presumptively wilful and malicious: Bealor v. Hahn, 117 Pa. 169.

4. The reasonable and lawful cause which will justify a desertion, and prevent it from operating under the act of May 4, 1855, P. L. 430, to deprive a husband of his curtesy estate in his wife's lands, must be something that under the law would have been sufficient to entitle him to a decree of divorce against her.

5. Testimony showing that a wife on one occasion used words which might be construed as a threat to her husband to poison him, which, however, did not alarm him; and exhibiting a state of domestic infelicity, without any violence, actual or attempted, against the husband or his property, is insufficient to entitle him to a divorce upon the ground of cruel and barbarous treatment.

6. In such a case, the fact that in a desertion proceeding against the husband, on complaint of the wife, wherein the husband testified as a witness in his own behalf, he made no mention while so testifying of any threat by his wife to poison him, is admissible as tending to show that a claim of such a threat, was an afterthought.

7. The conduct of the husband before the separation from his wife is material to the issue, in such a case, and therefore, when his hired man, testifying for him, denied upon cross-examination that he ever drove the husband out in company with another woman, during the wife's life, testimony offered to contradict this statement should be received.

8. When a witness has testified to a remark of the wife that if her husband did not take his horses away they might get poisoned, it is error to permit him to testify, further, that, soon after, one of the horses suddenly died, there being no offer to show that the horse died from poison, or that the wife had any connection with his death.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 124 January Term 1889, Sup. Ct.; court below, No. 14 September Term 1885, C. P.

On August 14, 1885, Jeremiah M. Hahn brought ejectment against H. A. Bealor, executor of the will of Rebecca Hahn, deceased, for a lot and a dwelling thereon, situated in the borough of Manheim. Issue.

At the trial on November 29, 1886, a verdict was rendered for the plaintiff, with six cents damages and six cents costs.

Statement of Facts.

A judgment entered thereon was afterwards reversed by the Supreme Court, with an order for a new venire: Bealor v. Hahn, 117 Pa. 169. At the second trial on August 27, 1888, the plaintiff, after having shown a prima facie title in himself to a curtesy estate in the property described in the writ, as surviving husband of said Rebecca Hahn, who died on January 2, 1885, and that the defendant was in possession, rested.

The defendant, in his case in chief, presented testimony tending to prove that, in the spring of 1883, the plaintiff left his wife Rebecca Hahn, and thereafter resided with his daughter-in-law, Mrs. Harry Hahn, in another house in the same town. Mrs. Julia Leber testified for the defendant, under objection, that immediately after the separation between the plaintiff and his wife, the latter came to the house of the witness, informed the witness that the plaintiff had left her without her consent, and cried bitterly, and seemed very much distressed by his leaving her. The witness was then asked to state whether or not her condition of distress continued after that occasion.

Objected to by plaintiff's counsel.

Q. Are you able to remember how soon after that occasion you have described, when she came to your house, how soon after that you saw her again? A. I can't tell you. I may have seen her every week; I did see her.

Q. After that first interview? A. Yes, sir. Except when I was out of town.

By the court: The witness not being able to fix the second time when she saw her, after that interview, other than that she saw her every week when not out of town, we overrule the offer; exception.[1]

The defendant put in evidence the record of a prosecution against Jeremiah M. Hahn, in the Court of Quarter Sessions of Lancaster county, for the desertion of his wife, Rebecca Hahn, wherein on September 6, 1884, the court sentenced said Jeremiah M. Hahn to pay the costs of prosecution, and to pay to his said wife for her maintenance the sum of $7 per week until further order.

In rebuttal, the plaintiff called H. C. Gibble, and made the following offer:

Mr. Brown: I propose to prove by this witness that he knew Mrs. Jeremiah M. Hahn, and that in her domestic relations she

Statement of Facts.

was unkind to Mr. Hahn; that after Mr. Hahn had left, she went to him, the witness, as a justice of the peace in Manheim, and he told her that he thought she had not done right; she at once admitted it, and said that she had not treated her husband as she ought to have treated him. All this was prior to September 6, 1884.

Objected to, by the defendant's counsel.

By the court: Offer admitted; exception.[2]

This witness and others then testified to acts and admissions of Mrs. Hahn, their testimony, the substance of which is given in the opinion of the Supreme Court, infra, tending to show that it was her nature to scold and be cross; that she would speak roughly and unpleasantly to her husband; that they were both inclined to be quarrelsome, and quarrels between them were not infrequent; that they occupied different sleeping-rooms and did not often take their meals together, and she would come to the table when the plaintiff and his son were eating, " slam down the plates that the victuals were in, and then go out of the house; " and that after the separation between them she admitted that she had not treated him as she should have done.

Charles Hahn, a son of the plaintiff and the deceased, testified that on one occasion, when the witness and his father were sitting at the breakfast table, his mother said to them, " I might just as well poison you, and then you would both be out of the road," in consequence of which the witness quit living at home. The witness was then asked to state whether or not, in consequence of what his mother said on that occasion, he was afraid that she would poison him.

Objected to, by defendant's counsel.

By the court: Objection overruled; exception.[3]

The witness answered, " I was."

Samuel Plasterer testified that he lived with and worked for the plaintiff prior to the separation between Mr. and Mrs. Hahn; that on one occasion, when the witness, by direction of the plaintiff, had brought out the plaintiff's carriage to take Mrs. Hahn out for a drive, she declined to go, saying that her husband's horses should not pull her any more, and that soon after, when the witness went to feed the horses, she said to him, " It is a wonder Mr. Hahn don't take the horses away, for the horses might get poisoned."

Q. Did one of the horses die there, shortly after that, suddenly?

Objected to, by defendant's counsel.

By the court: Objection overruled; exception.[4]

A. Yes, sir.

On cross-examination the witness denied that he had ever driven the carriage out, when the plaintiff and Mrs. Harry Hahn were riding in it together.

The plaintiff having closed his testimony in rebuttal, the defendant, H. A. Bealor, took the stand and his counsel made the following offers:

Defendant offers to prove by witness, H. A. Bealor, that he was present at the hearing in the desertion case on September 6, 1884, and that Jeremiah M. Hahn testified in his own behalf, in the presence of his wife, and that he said nothing of any fear of his wife poisoning him, or that she had ever said anything about poisoning him.

Objected to, by plaintiff.

By the court: Objection sustained; exception.[5]

Defendant offers to prove by H. A. Bealor, to contradict Samuel Plasterer, that he saw him driving out Mr. Hahn and his housekeeper, Mrs. Harry Hahn, several times before and after the separation of Mr. Hahn from his wife.

Objected to, by plaintiff.

By the court: Objection sustained; exception.[6]

At the conclusion of the testimony, the court, PATTERSON, J., charged the jury in part as follows:

What is there to keep this plaintiff out of his tenancy by the curtesy? The act of assembly has made wilful neglect or refusal to provide for his wife, or wilful and malicious desertion for one year or upwards, previous to the death of the wife, a reason why he should not enjoy that right. This act of assembly was passed as late as 1855. Before that, there was no prevention of the recovery by a husband, if his wife died possessed of and owning real estate. . . . .

The act first provides that neglect or refusal to provide for the wife, for one year or upwards, may deprive the husband from obtaining his tenancy by the curtesy. You will observe that, in this case, no evidence except the record of the Quarter

### Charge of Court below.

Sessions court of Lancaster county has been given in evidence on that point, to show a want of maintenance or provision for the wife. And, therefore, the act of assembly provides that another dereliction of the husband may deprive him of his tenancy and prevent him from recovering in this action ; namely, wilful and malicious desertion, as we have just read to you, desertion of the wife for one year or upwards previous to her death. [If this is shown properly and clearly, namely, wilful and malicious desertion, then the plaintiff, the husband, cannot recover in this action. But is that shown to your satisfaction in this case ? That should be made out, however, to appear to your entire satisfaction.] [7] You cannot find it from mere supposition ; you must find it from the evidence in the case. If it does not so appear to your satisfaction, then you must find a verdict in favor of the plaintiff, the husband.

Now, did Mr. Hahn, the plaintiff, leave the domicile of his wife Rebecca, wilfully and maliciously ? The law says, the intent to desert wilfully and maliciously is manifested, when without cause or consent either party, that is, either the husband or the wife, withdraws from the residence of the other. Was there a wilful desertion on the part of Mr. Hahn, the husband, in the spring of 1883 ? Did he leave his habitation and his wife in the spring 1883 wilfully and without cause? You must remember the evidence ; we shall not repeat it, because it is brief and has been submitted to you to-day. If you find from the evidence that the plaintiff, Hahn, left wilfully and without cause, then malice must be presumed, because the act says, wilfully and maliciously. If you find from the evidence that he left without cause, then malice must be presumed, and you would have, therefore, desertion wilful and malicious.

The plaintiff, Hahn, in this case, under the act of 1855, as the Supreme Court have said to us, has the burden of proof on him to show that he had reasonable and lawful cause for deserting her, for leaving her. Has he shown you that by the proof? That question is given to the jury, and we submit that question as a question of fact to you to determine. Remember that separation, the Supreme Court says, is not desertion. [Desertion is the actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in without cause for two years.] [8]

Charge of Court below.

The defendant was permitted to call witnesses as to the declarations of Rebecca Hahn on the evening of the day on which Jeremiah M. Hahn left the house in which he and his wife resided. The defendant called witnesses to give evidence of other facts. The evidence you must remember. It is not voluminous; it is not extensive; you can recollect it all. The plaintiff called witnesses, also, to show that he did not wilfully and maliciously desert or leave his wife. Has he satisfied you by evidence, satisfied you that he had a good and reasonable cause for such desertion, for such leaving the domicile of his wife? The whole question, the whole case turns on that question. . . . . And if you find from all the evidence that the plaintiff, Jeremiah M. Hahn, had a reasonable and lawful cause for such leaving his wife, then your verdict will be for the plaintiff. If you do not find that fact, then your verdict should be for the defendant. . . . .

The court is requested by the defendant to charge the jury:

1. That if a husband, without reasonable cause and against the consent of his wife, refuses cohabitation with her, and separates himself from her and her habitation for one year and upwards prior to her death, it is such a desertion as works forfeiture of his curtesy in her real estate.

By the court: We answer, yes.

2. That the reasonable cause which would justify the husband in leaving his wife, is such cruel and barbarous treatment on her part, as would sustain his application for divorce.

By the court: We answer, yes.

3. If wilful desertion is proved in this case, to the satisfaction of the jury, the fact that the plaintiff sent his wife remittances for her support, would not relieve him from the forfeiture of his curtesy in her real estate.

By the court: We say, yes, to that.

4. If the jury believe the uncontradicted evidence that the plaintiff left his wife without her consent, in the spring of 1883, and never returned, the verdict must be for the defendant, as the testimony of the plaintiff is not sufficient to show a legal cause for such leaving.

By the court: The court denies that point. We refuse to affirm that point. The question is for the jury.[10]

The plaintiff has submitted the following points:

Arguments.

1. If the jury believe that Jeremiah M. Hahn did not wilfully and maliciously desert his wife or fail to provide for her for the period of one year or more, immediately preceding her death, the verdict must be for the plaintiff.

By the court: We answer that in the affirmative. We say, yes.

2. If the jury believe that Jeremiah M. Hahn had reasonable and lawful cause for leaving his wife, the verdict must be in his favor.

By the court: We answer, yes.

3. If the testimony in the case, as given by the witnesses, is believed by the jury, the plaintiff had reasonable cause to leave his wife and the verdict must be in his favor.

By the court: We say yes, if you believe the testimony of the plaintiff's witnesses.[11]

The verdict of the jury was in favor of the plaintiff, with six cents damages and six cents costs. After argument, a motion for a new trial was refused by the court and judgment was entered on the verdict. Thereupon the defendant took this appeal, assigning for error:

1. The rejection of the defendant's offer.[1]

2–4. The admission of the plaintiff's offers.[2 to 4]

5, 6. The rejection of the defendant's offers.[5 6]

7, 8. The parts of the charge embraced in [ ] [7 8]

9. The omission from the charge of any instruction as to the nature of the conduct on the part of the wife that would constitute the reasonable cause justifying her husband in leaving her, without her consent.

10. The answer to defendant's point.[10]

11. The answer to plaintiff's point.[11]

*Mr. Marriott Brosius*, for the appellant:

1. The first assignment raises the question whether, a state of mental distress on the part of Mrs. Hahn, produced by her husband's desertion of her, having been shown by her conduct and declarations immediately after it occurred, it was competent to prove a continuance of the distress during the continuance of the desertion and until her death. There is reason for holding that where an effect may be shown to illustrate the

character of the cause which produced it, the continuing of the effect is so connected with its first manifestation as to constitute a continuing act, and therefore it may be shown as a part of the res gestæ: Cattison v. Cattison, 22 Pa. 275.   The offer embraced in the second assignment is open to two objections: (*a*) If everything in the offer be true, it presents no legal justification for the desertion, and (*b*) the offer related to conduct prior to September 6, 1884, when the Court of Quarter Sessions adjudicated the fact of Mr. Hahn's wilful desertion.   The adjudication in that court is conclusive in the present case : Bealor v. Hahn, 117 Pa. 169; Schriver v. Eckenrode, 87 Pa. 213; Commonwealth v. Evans, 101 Mass. 25 ; Commonwealth v. Fieldman, 131 Mass. 588 ; State v. Long, 63 Me. 215 ; Bauder's App., 115 Pa. 480.

2. The plaintiff's son should not have been permitted to tell his apprehensions to justify which no conduct on the part of Mrs. Hahn had been shown, thus opening the way for the jury to base the verdict on the foolish notion of a boy.   So, there was nothing in the remark of Mrs. Hahn testified to by Plasterer to justify the court in allowing him to state that after this a horse of the plaintiff died suddenly, leaving the jury to infer that she poisoned it.   Furthermore, this had all occurred prior to the adjudication in the desertion case.   The fifth assignment should be sustained.   It is hardly conceivable that Mr. Hahn, while testifying for himself in the desertion case, would have omitted so material a fact as a threat by his wife to poison him, if such a fact existed.   The eighth assignment needs but the suggestion, that to require the facts to be made out to the entire satisfaction of the jury, is imposing a measure of proof not required in civil cases.   For the purposes of this case, desertion for no more than one year was sufficient.   The definition of desertion in the charge, giving as one of its elements persistence for two years, was an error, which may have caused the verdict against us.

3. There is such a thing as a charge being so inadequate to the case as to constitute error, independent of requests of counsel: Citizens Pass. Ry. Co. v. Ketcham, 122 Pa. 229; Schwenk v. Kehler, 122 Pa. 67.   The necessity for some instruction as to the kind of conduct on the part of a wife that justifies her husband in deserting her, was in this case so ur-

Arguments.

gent that its omission ought to be held error without a special request for it, on the principle that the court is bound unasked to instruct the jury in those cardinal and necessary matters of law without which they cannot be expected to understand their duty: Heffner v. Chambers, 121 Pa. 84. ° The evidence in this case was not sufficient to sustain the verdict. The test is, whether it would have been sufficient to sustain a decree of divorce on the husband's petition. Nothing could justify the desertion of his wife by Mr. Hahn, short of such cruel and barbarous treatment of him by his wife as would render his condition intolerable or his life burdensome: Grove's App., 37 Pa. 443; Gordon v. Gordon, 48 Pa. 226; Jones v. Jones, 66 Pa. 494.

*Mr. J. Hay Brown* (with him *Mr. Jacob B. Amwake*), for the appellee:

1. A recurrence of grief to Mrs. Hahn after such a break in the time as a week, at least, and without any proof of continuity of the condition or of the cause, cannot be regarded as a part of the res gestæ; it might fairly be ascribed to some totally different cause than the desertion. In the case cited in support of the first assignment, the declarations admitted in evidence were made on the night of the wife's flight. The matter for trial, in the present case, was whether the plaintiff had been guilty of wilful desertion for a year prior to January 2, 1885, the date of his wife's death. The inquiry, therefore, must necessarily go back of the date of the proceeding in the Quarter Sessions, and anything that showed the nature of the relations between the parties at any time within the year was admissible. Nay, the inquiry goes þack to the original leaving. The issue is not the precise matter determined by the Quarter Sessions, and its decree is not conclusive: Bander's App., 115 Pa. 480.

2. What circumstance could better throw light upon the causes of the plaintiff's separation from his wife, than their son's fear that she would execute her threat to poison both him and his father? And what error can there be in letting the jury have, for what it was worth, the fact that, after her threats in regard to poisoning the horses, a valuable horse died? The rejected offers, which are the basis of the fifth and sixth assign-

Opinion of the Court.

ments of error, were wholly immaterial. The charge must be taken as a whole. The complaint of desertion is in the nature of a criminal charge, and it was entirely right to say that it should be made out to the entire satisfaction of the jury. On nothing less than clear evidence that the husband's conduct was within the statute, should the ancient right of curtesy be defeated. The degree of intolerable conduct which will justify a separation, is a matter of fact which no rule of law can define. Taking the charge as a whole, the jury could not have been misled as to it.

3. It is not the law that the test of the evidence necessary to relieve the husband from the forfeiture of his curtesy, is its sufficiency to warrant a divorce upon his petition. The act of May 8, 1854, P. L. 644, recognizes that in such divorce cases, while the court might find sufficient cause to decree the divorce, this is not inconsistent with an allowance of support to the offending wife. Much more, the testimony in a case like this may be sufficient to relieve the husband of the charge of wilful and malicious desertion, and yet fall short of the measure required to entitle him to a divorce. But if the proposition of the defendant were sound, this court, in the very cases he cites in support of it, has gone far in sustaining decrees of divorce upon evidence of the same character as that now before the court. Thus, all the elements that justified the divorce in Jones v. Jones, 66 Pa. 494, are present in this case, and established by competent testimony. The testimony should not be measured by the standard of fullness required where the husband is seeking a divorce or to avoid the responsibility of maintenance.

OPINION, MR. JUSTICE McCOLLUM:

There are eleven specifications of error in this case, six of which relate to the admission and rejection of evidence, and the remainder to the charge of the court.

We see no error in the refusal to allow the question contained in the first specification. The witness had testified that she saw Mrs. Hahn immediately after her husband left her, and that she cried, and seemed distressed. As the issue was whether the husband had cause for leaving his wife, her condition, or what she may have said, a week or a month after his departure, cannot be regarded as a part of the res gestæ.

The second specification raises the question whether the decree in the desertion proceeding is a bar to any investigation of the cause of the separation. This record was inadvertently misdescribed in Bealor v. Hahn, 117 Pa. 169, as "between the same parties," when in fact it was a record of a proceeding between the commonwealth and Jeremiah M. Hahn. The question then before the court was on the admissibility of this record as evidence, not upon its effect. It was not then suggested that it constituted an estoppel, or a bar, as to all matters occurring before the order for support was made. It is a general principle, and one of the elements of the doctrine of res judicata, that personal judgments conclude only the parties to them, and their privies: Bigelow on Estoppel, 46. No one can take advantage of a judgment or decree, who would not have been prejudiced by it had it been otherwise; estoppels must be mutual: Chandler's App., 39 Leg. Int. 347. If the proceeding had been dismissed on the ground that the husband had reasonable cause for abandoning his wife, would the record have been a bar to a suit by the wife for divorce on the ground of desertion? We think not. The proceeding is quasi criminal in its nature, and the commonwealth is a party to it. It may be instituted on the complaint of any person. If a stranger makes the complaint, the effect of the judgment is the same as if the wife made it. The person at whose instance the proceeding is commenced is not a party to the issue. "Parties, in the larger legal sense, are all persons having a right to control the proceedings, to make defence, to adduce and cross-examine witnesses, and to appeal from the decision, if any appeal lies:" 1 Greenl. Ev., § 535. In Petrie v. Nuttall, 11 Exch. 569, the plaintiff sued in trespass for breaking and entering his land. The defence was that the part referred to was a public highway; and an indictment, verdict, and judgment against the plaintiff were pleaded by way of estoppels for obstructing the very same piece of land, as being the Queen's highway. To this defence the plaintiff demurred, and his demurrer was sustained on the ground that the parties were not the same in the transaction. ALDERSON, B., said that it was essential to an estoppel that it should be mutual, so that the same parties or privies might be bound and take advantage of it. The crown and subject were parties to the indictment, and therefore it was not between the two parties to the action

Opinion of the Court.

in which it was pleaded as an estoppel. In Hutchinson v. M. & M. Bank, 41 Pa. 42, which was an action by the bank to recover money stolen from it, the effect of an acquittal of the defendant on an indictment for the larceny of the same money was considered, and LOWRIE, C. J., said: " The private wrong was not merged in the public one, nor is the public prosecution intended to supersede the private action. Their purposes are entirely different. The person wronged is not chargeable with the conduct of the prosecution, and therefore not affected by an acquittal." In Bauder's App., 115 Pa. 480, which was an action by the husband for a divorce on the ground that his wife had deserted him, it appeared that the husband left his wife in July, 1882; that she instituted proceedings against him for desertion, which were terminated on November 13, 1882, by an order upon him for her maintenance, and that this order was in full force at the time of the trial of the suit for divorce. It was contended that this order was a legal bar to the divorce prayed for. Evidence was admitted showing the disagreements of the parties, how they lived together, and how they separated. The learned judge of the court below, referring to the record of the desertion proceeding, in his charge to the jury said " We have received that record in evidence; and you will have it before you as one of the circumstances in the case, showing how these parties came to be separated, and you can also receive it as persuasive evidence of things as they stood at the time, but not conclusive." And this court said: " There is no error in the charge of the court, nor in the answers to the points." It is true there was evidence from which a desertion subsequent to the order of November, 1882, might have been found by the jury, and this was referred to in the opinion affirming the decree; but we think the decision, fairly interpreted, supports the view that the record in the Quarter Sessions is persuasive, but not conclusive, evidence of a previous desertion by the husband. The second specification of error is not sustained.

In the present case the husband claims an estate by the curtesy in land of which his wife died seised. He deserted her more than a year previous to her death. It is incumbent on him to show that he had reasonable and lawful cause for such desertion: Bealor v. Hahn, supra. It is well settled that the reasonable cause which will justify husband and wife in aban-

doning each other is such as would entitle the party to a divorce, and we think this rule applies to this contest.

The tenth and eleventh specifications raise the question whether the plaintiff's evidence shows such cause, and require us to pass on the sufficiency of the evidence to justify the desertion. But five witnesses called by the plaintiff speak of the relations and conduct of the husband and wife before their separation. H. C. Gibble, a justice of the peace to whom Mrs. Hahn applied for a warrant against her husband for desertion, says it was Mrs. Hahn's nature to scold and be cross, and that she admitted to him that she had not treated her husband as she should have done. Charles Hahn, a son of the plaintiff, aged twenty-two years, says he heard his mother call his father "a d——d liar," and that on one occasion, while he and his father were at the breakfast table, she said: "I might just as well poison you, and then you would both be out of the road;" and that in consequence of this remark he was afraid, and left home two weeks afterwards. He was not a witness in the desertion proceeding. Samuel Plasterer says that Mrs. Hahn once said to him: "It is a wonder that Mr. Hahn don't take the horses away. They might get poisoned;" but it does not appear that he mentioned this to the plaintiff. Priscilla Long says that Mrs. Hahn was not very pleasant when her husband was present, and that she talked unkindly about him when he was absent; that from three to five years before their separation their children had diphtheria; that the witness's brother and Mr. Hahn did most of the nursing of them; that Mrs. Hahn assisted "very little," and seldom stayed in the sick room when her husband was there. On cross-examination, this witness testified that the children were very sick, and that her brother, Mr. and Mrs. Hahn, and the neighbors, assisted in taking care of them; that Mrs. Hahn "didn't nurse them all the time. She couldn't. She had to be relieved." Abraham Schopp says Mrs. Hahn would talk roughly and unpleasantly to her husband, and that he would sometimes say unpleasant things to her, and that both were a little inclined to be quarrelsome. There is some evidence to the effect that they occupied different sleeping-rooms, and that they did not often take their meals together. But neither complained of these matters, and the evidence fails to show who was responsible for them. This

Opinion of the Court.

is the substance of the evidence on which the plaintiff relies as his justification for abandoning his wife. It exhibits a state of domestic infelicity, but it does not present a case of cruel and barbarous treatment by the wife of the husband, which rendered his condition intolerable, and life burdensome: Gordon v. Gordon, 48 Pa. 226; Jones v. Jones, 66 Pa. 494. The single, so-called "threat" testified to by the son, did not alarm the husband; there was no act of violence to his person committed by the wife, and there was no evidence from which an attempt or intent to harm him or his estate could be fairly inferred.

The insufficiency of the proofs to authorize a divorce at the suit of the husband on the ground of cruel treatment by the wife is substantially conceded; but it is contended that "the testimony is not to be measured by the standard of fulness required to be made out by the husband to secure a divorce." A husband who has wilfully and maliciously deserted his wife for one year or upwards, previous to her death, cannot, since the act of May 4, 1855, P. L. 430, successfully claim an estate as tenant by the curtesy in lands of which she died seised. Where an unexplained desertion appears, it is presumed to be wilful and malicious, and it lies on him to show reasonable and lawful cause for it. If he cannot justify his abandonment of her by evidence which would entitle him to a divorce, he cannot have the rights of a husband in her estate. The tenth and eleventh specifications of error are sustained.

The seventh, eighth, and ninth specifications relate to the charge. Two of these are founded upon extracts from it, and, of course, must be considered in connection with it. We think that it adequately presented the issue, and that the jury could not have been misled by it. They were distinctly instructed that the plaintiff could not recover if they were satisfied from the evidence that he wilfully and maliciously deserted his wife, for one year or more prior to her death. These specifications are not sustained.

The third specification is dismissed, as we cannot say that it was error to allow the question embraced in it.

As to the fourth, fifth, and sixth specifications. The fact to which the question contained in the fourth specification refers was immaterial, unless Mrs. Hahn had some connection with

Syllabus.

it. As there was nothing upon the record to justify such an inference, and as it was not pretended that the horse was poisoned, or died from other than natural causes, the question should have been excluded. It was competent and proper for the defence to prove that the claim of a threat by Mrs. Hahn to poison her husband and son was an after-thought, and that it was not made on the trial of the desertion case, although the plaintiff in this action was the defendant and a witness in it. We think, too, that the evidence offered to contradict Plasterer should have been received. It related to the conduct of the plaintiff before the separation from his wife, and was therefore material to the issue. These specifications are sustained.

> Judgment reversed, and a venire facias de novo awarded.