## O'Connor's Estate.

*Decedents' estates — $5000 allowed to husband — Desertion — Burden of proof—Evidence—Order for support—Separation by mutual consent—Act of June 7, 1917.*

1. Where a husband claims the $5000 allowed out of his deceased wife's estate, as provided by the Act of June 7, 1917, P. L. 429, and the collateral heirs of his wife show that he separated from her more than a year before her death, the burden is on him to show that there was no unlawful and malicious desertion on his part.

2. To overcome the presumption that there was no wilful and malicious desertion, the husband must show that the facts and circumstances which caused him to leave his wife were of such a grievous character as would have entitled him to a divorce, or that the separation was consentable or desired by both.

3. In such case, the fact that the husband, after the separation, paid to his wife a certain sum per week under an order of the Court of Quarter Sessions, does not of itself establish that the separation was wilful and malicious, where the opinion of the court shows that it was by mutual consent.

4. The payment of the allowance discharged his duty to provide for her.

Exceptions to adjudication.  O. C. Washington Co., Feb. T., 1922, No. 11.

*Vernon Hazzard,* for accountant; *Hugh E. Fergus,* for exceptant.

HUGHES, P. J., April 7, 1922.—The dispute now before us for decision is raised by an exception filed by John J. O'Connor, surviving husband of the decedent, to the adjudication and decree of this court *sur* audit of the first and final account of Hugh Cairns, administrator, which exception assigns as error the action of this court in awarding the net balance for distribution (left after the payment of administration costs and the decedent's debts) to her collateral relations as her next of kin, instead of to the exceptant, as her surviving husband, under his claim for a spouse's allowance.  This net balance for distribution is shown to total $1993.37 by the schedule of distribution attached to and forming a part of the said adjudication and decree *sur* audit. The controversy to be decided, therefore, narrows down to a single and simple question, to wit: Should such $1993.37 have been distributed to the exceptant as the surviving spouse, or to and among the collateral kindred, as was directed by the auditing judge in said audit adjudication and decree?

Let us first recall to mind the material facts.  Mary O'Connor, a resident of Charleroi, this county, died intestate on Sept. 26, 1920, survived by no children or issue, but by a husband, John J. O'Connor, and certain collateral relatives, to wit, a brother, Hugh Cairns, the administrator of her estate, and fifteen nieces and nephews, children of her deceased brothers and sisters.  At the time of her death she was seized of a small amount of personalty and also of a dwelling-house property, situate in the town of Roscoe, this county, which, under orders of this court, the administrator subsequently sold for the payment of her debts.  Such personalty and realty composed her whole estate, and the proceeds of the sales thereof are the subject-matter of the administrator's account here before us.

When this account was duly called for audit and confirmation, the exceptant did not appear, either in person or by attorney.  The administrator's petition *sur* audit certifying that there existed a marriage settlement between the decedent and her husband, and counsel for the accountant orally at bar representing the existence of such marriage settlement, and averring that Hugh E. Fergus, attorney for the said John J. O'Connor, had been given actual notice of the filing of the said account and of the said audit, and because, as has been said, neither the said husband nor any attorney for him appeared at the said hearing, the auditing judge (the writer hereof) was

misled into believing that such husband had, either through the alleged marriage settlement released or voluntarily abandoned all rights or claims in and to her estate, and, hence, the said net balance was thereupon, in the said audit adjudication and decree, awarded to and distributed among her said collateral relatives as her lawful next of kin.

Before the *nisi* period of such adjudication and distributing decree had expired, the said husband appeared by counsel and caused to be filed thereto the exception now before us, wherein the exceptant maintains that said net balance should properly have been awarded to him under his claim for a $5000 allowance as surviving spouse, made in the proceedings to that end theretofore instituted by him in this court to No. 3, May Term, 1921, Orphans' Court. No doubt it would have been better practice had such husband, instead of filing the said exception, petitioned this court for the vacation and setting aside of the said adjudication and decree and for the opening of the audit for the taking of further testimony, to the end that he might be given an opportunity to present and substantiate his claim for such balance. However, the exception so filed served to preserve his rights; but, in order that he might have his day in court to prove his claim, a novel procedure was resorted to and permitted, to wit, a trial under an exception, all parties interested being *sui juris*, represented of record and making no objection to such irregular procedure.

At this trial *sur* exception it developed that the decedent and her husband had never in fact executed any marriage settlement as certified in the administrator's petition *sur* audit and as averred by the administrator's counsel at bar, and, moreover, that the husband had never in fact abandoned his rights in her estate as suggested. The evidence adduced at the audit showed, on the other hand, that he had taken positive steps from time to time to preserve, procure and possess himself of, the share and interests in her estate to which, under the law, he was entitled; the public records offered in evidence showing that he had applied to the Register of Wills for the grant to him of letters of administration, had made claim for, and instituted proceedings to recover, a $5000 allowance as surviving spouse, had consented of record to the consummation of the administrator's sale of her said real estate, expressing such consent and withholding the pursuance of said spouse's allowance proceedings, upon the express understanding that his conduct would not be deemed a waiver or in prejudice of his said rights and claims to and upon the funds to be distributed at the audit of the administration account.

The husband's claim, therefore, now comes before us for determination *de novo* and unprejudiced by laches or estoppel. The collateral relatives, all of whom are *sui juris* and appear of record (among whom the said net balance was, in the said adjudication, decree and schedules of distribution, awarded), maintained that the said exceptant is barred from here sharing in his wife's estate because, they allege, he wilfully failed to support and maliciously deserted her for the period of more than one year immediately prior to her death; the truth of which charges the exceptant denies.

The evidence adduced at the hearing *sur* exception establishes that the decedent, Mary O'Connor, and John J. O'Connor were married in April, 1913, and lived together as man and wife until the month of November, 1918, when he left their common abode, and since which time they have never lived or cohabited together. On Dec. 17, 1918, the wife made an information before a justice of the peace, charging her said husband with having deserted their home on Nov. 9, 1918, and with refusing thereafter to support her. The husband having thereupon been arrested and bound over to the Court of Quarter

Sessions of Washington County, the cause was heard before McIlvaine, P. J., who, after withholding an adjudication therein for some months in the hope that the parties might themselves adjust their differences (which result, however, was not accomplished), filed on Sept. 25, 1919, an opinion with suffixed decree, requiring the said husband to pay to his wife $10 per month so long as he should refuse to furnish her a home and live with her, and further requiring him to furnish a bond in the sum of $500, conditioned on his compliance with the said order of maintenance; which bond was thereupon duly furnished, approved and filed. In compliance with the said decree, the defendant thereafter made to his wife the required monthly payments, beginning with the date of the said decree and continuing the same down to the date of her death, which, as has been said, occurred on Sept. 26, 1920. After the said separation, the husband continuously resided in the same town where they had theretofore lived together, but all efforts of friends and attorneys to effect a reconciliation proved utterly unsuccessful. Did such course of conduct on the part of the husband forfeit his rights and shares in her estate?

When, at the hearing, the collateral kindred admitted the fact of marriage, the exceptant became, *prima facie*, entitled to receive the distributive share in her estate to which a surviving spouse is lawfully entitled, the burden of defeating the recovery of such share shifting, at that point, to the shoulders of the collateral kindred: Schreckengost's Estate, 77 Pa. Superior Ct. 235 (1921). When thereupon the collaterals established the fact that the exceptant had left their common abode on or about Nov. 9, 1918, and never thereafter returned thereto or cohabited with his wife, until her death on Sept. 26, 1920, to wit, many months in excess of the statutory period of one year prior to her demise, they thereby cast the burden of proof back upon the shoulders of the exceptant; for the law would presume that the husband's leaving was a wilful and malicious desertion, unless otherwise satisfactorily proven: Bealor *v.* Hahn, 117 Pa. 169 (1887); Hahn *v.* Bealor, 132 Pa. 242 (1890); Whelan *v.* Whelan, 183 Pa. 293 (1887); Middleton *v.* Middleton, 187 Pa. 612 (1888); Weller *v.* Weller, 213 Pa. 265 (1906); Schreckengost's Estate, 77 Pa. Superior Ct. 235 (1921).

However, counsel for the collateral kinsmen did not elect to rest at this point his clients' cause on the said presumption of law then standing in their favor, but saw fit to attempt to prove that such leaving by the husband was not only presumptively, but also in fact, a wilful and malicious desertion, thereupon offering in evidence the record of said maintenance proceedings so conducted and concluded in the Court of Quarter Sessions of this county, including the said opinion and decree therein. By such move, this counsel, in our opinion, went too far for his clients' good; such procedure in fact proving them out of court at this point, for the reasons hereinafter explained. But, for the moment, let us lay aside all consideration of such legal proceedings at this point so offered in evidence by counsel for the collateral kindred; the same to be hereafter referred to and further discussed.

At the hearing *sur* exception the husband did not attempt to deny that he had indeed left their common abode on or about Nov. 9, 1918, as testified by the decedent's collateral kindred, but in due course of the hearing offered evidence tending to show that his said leaving was indeed not a wilful and malicious desertion on his part. Now, to overcome the said presumption of law standing against him, that his leaving of their common abode was wilful and malicious, it became incumbent upon the husband (if he were to be successful in recovering a surviving spouse's share in his deceased wife's estate) to establish satisfactorily, either (1) that the facts and circumstances which

O'Connor's Estate.

caused him to leave their common abode were of such a grievous character as would have entitled him then to a divorce had he seen fit to have instituted a proceeding for such end, or (2) that the separation was consentable or desired by both. Assuming the laboring oar, the husband thereupon offered evidence tending to establish both of the said defences, to wit: First, that the cause of his leaving was due to cruel and barbarous treatment inflicted by his wife upon him, endangering his life and rendering his condition intolerable; and, second, that the separation was in fact not a wilful and malicious desertion on his part, but consentable by and agreeable to her as well as himself. In this he was competent to testify in his own behalf, because both he and the collateral kindred made their respective claims for distributive shares through devolution: Phillips's Estate, 271 Pa. 129 (1921); Schreckengost's Estate, 77 Pa. Superior Ct. 235 (1921); Kvist's Estate, 256 Pa. 30 (1917).

However, it becomes unnecessary for us here to further consider, weigh or pass upon such charges of violence and abuse which the husband avers his deceased wife inflicted upon him, or to determine whether or not they reach that standard of gravity which would have entitled him to a divorce; for all of these alleged acts of violence and abuse must have occurred before the trial of the maintenance cause in the Court of Quarter Sessions, at which, the record shows, both sides embraced the opportunity to air their troubles and prove their grievances. All of these matters were thereupon duly considered and adjudicated by the said court, McIlvaine, P. J., the trial judge, reaching this conclusion, *inter alia:* "There was nothing in the testimony, however, showing that either one of them had good grounds of divorce from the other, the difficulty appearing to be incompatibility of temper."

It is proper to adopt this conclusion here, and, hence, such part of the exceptant's defence avails him nothing. But although the exceptant has failed to persuade us that he was entitled to a divorce, his testimony, as corroborated by other evidence, including the record of the Quarter Sessions proceeding, so adduced at the trial by counsel for the collateral kindred, satisfies us that the separation was consentable, its inception and continuation to the end being agreeable to and desired by both.

Counsel for the collateral relatives relies with great assurance upon the record of the said Quarter Sessions cause, urging that such proceeding so resulting in the court's entering the maintenance order conclusively establishes the fact of the husband's unlawful and malicious desertion. With this conclusion, however, we cannot agree. Had the Court of Quarter Sessions in fact definitely adjudged the husband guilty of a wilful and malicious desertion, the proof of such adjudication would, of course, be competent, relevant and material: Bealor *v.* Hahn, 117 Pa. 169 (1887); Hahn *v.* Bealor, 132 Pa. 242 (1890); Schreckengost's Estate, 77 Pa. Superior Ct. 235 (1921); Phillips's Estate, 271 Pa. 129 (1921). Yet such record would, at best, be but persuasive evidence in this, a collateral proceeding, and not conclusive: Hahn *v.* Bealor, 132 Pa. 242 (1890); Phillips's Estate, 271 Pa. 129 (1921). Therefore, even though the Quarter Sessions record did actually show that the exceptant had been therein adjudged guilty of malicious desertion, the presumption arising from such adjudication could in this, a collateral proceeding, be rebutted by proof of inconsistent or explanatory facts and circumstances. But upon scrutinizing the Quarter Sessions record, we find that it does not in fact show that the exceptant was therein adjudged guilty of wilful and malicious desertion, but the contrary, the conclusion being there reached by that court that the defendant's leaving his wife was not wilful and malicious, but consentable by both. The record is evidence only of what was thereby

adjudged: Carey v. Carey, 25 Pa. Superior Ct. 223 (1904); Schreckengost's Estate, 77 Pa. Superior Ct. 235 (1921). Now, upon referring to the opinion in the said maintenance case, it is observed that the Court of Quarter Sessions reached certain pertinent findings and conclusions which are highly material and important here, to wit:

"The testimony also shows that the husband left his wife because, as he states it, it was impossible (for him) to live with her, and that he is now unwilling to live with her. The testimony also shows that the wife was glad when her husband left her, and is now unwilling to live with him. . . . But in making our decree of maintenance, we have the right to take in consideration that the wife is not willing to live with her husband and give him those services which he is entitled to. . . ."

The Quarter Sessions Court in this plainest of language, therefore, found and concluded that the separation was consentable. The authorities hold that separation by mutual agreement or consent is not desertion: Ingersoll v. Ingersoll, 49 Pa. 249 (1865); Phillips's Estate, 271 Pa. 129 (1921). The guilty intent to desert is rebutted where the separation is encouraged by the other party or agreed to by mutual consent: Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241 (1919). Where, on account of quarrels, dissatisfaction with the domestic situation or other similar cause, the parties prefer or choose to live apart, such separation is not, in the eyes of the law, a wilful and malicious desertion: Munson v. Crookston, 219 Pa. 419 (1908); Pearce v. Pearce, 53 Pa. Superior Ct. 129 (1913).

We, accordingly, here reach and adopt that conclusion reached by the Court of Quarter Sessions, to wit, that the separation, in its inception and continuation to the date of said decree, was consentable by and agreeable to both parties, the wife as well as the husband, and that, therefore, such separation was, in the contemplation of law, not a wilful or malicious desertion.

This separation thus found by the Court of Quarter Sessions to have been to that date consentable must be presumed by this court to have continued consentable thenceforth to the end, because at the hearing sur exception no evidence was offered tending to show that either husband or wife, at any time after the entering of the Quarter Sessions decree, made any efforts or offers to the other to resume marital relations, while considerable evidence appears on the record showing that friends and attorneys repeatedly attempted to bring the husband and wife together, all of such efforts, however, bringing not the slightest results. Therefore, there being no evidence before us to show that the wife, after such decree, ever made any offer to resume marital relations, we are obliged to presume that until her death she continued her assent to such consentable separation: Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241 (1919). Consequently, we reach the conclusion that at no time, from the beginning to the end of such separation, was the same other than consentable, being agreeble to her as well as to him, and that, accordingly, he was not at any time within the contemplation of law guilty of the wilful and malicious desertion of her.

The decedent having died on Sept. 26, 1920, to wit, since the Intestate Act of June 7, 1917, P. L. 429, became operative, her estate, its administration and devolution, are to be held governed by such statute. Upon referring to the section of this statute upon which the collateral kindred rely to defeat the recovery of the exceptant's claim, to wit, section 5, it is observed that, under its provisions, a husband can forfeit his right to share in his intestate wife's estate by a failure in his duties to her for a period of at least one year immediately preceding her death, in either one or both of two respects: (1) By

his wilful neglect or refusal to provide for her; or (2) by a wilful and malicious desertion of her. This section 5 is a re-enactment of section 5 of the Act of May 4, 1855, P. L. 430, with certain immaterial changes in language. Under the earlier statutes, the courts recognized that the specified derelictions of the husband were separate and distinct, and that either of the said causes, if pursued throughout the statutory period, was sufficient in law to debar all rights of the derelict husband: White's Estate, 188 Pa. 633 (1898); Shaw's Estate, 54 Pa. Superior Ct. 444 (1913); Kvist's Estate, 256 Pa. 30 (1917). It is thus seen that it was possible for the exceptant to have forfeited his rights in his deceased wife's intestate estate, either by his non-support or unlawful desertion, or both, providing that such dereliction or derelictions had been continued for the period prescribed by the statute, to wit, not less than the year immediately preceding her death. Now, we have already found that the exceptant was at no time guilty of wilful or malicious desertion of her; but did he provide for her in the contemplation and intendment of the statute? If he did, he is, of course, not here to be debarred from sharing in her estate as surviving spouse; but if he did not, his rights in her estate must now be held to have been forfeited, and this, notwithstanding that he was in fact never guilty of wilfully and maliciously deserting her.

It is not denied by the collateral kindred that the exceptant, in compliance with the maintenance order of the Court of Quarter Sessions of this county, under date of Sept. 25, 1919, promptly paid the monthly payments of $10 each thereby prescribed as the same fell due thereafter until her death. The information in said prosecution was made by her and the court proceedings conducted under the Act of April 13, 1867, P. L. 78, which provides, *inter alia*, that the Court of Quarter Sessions, after hearing, may order the husband, being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of his said wife, not exceeding $100 per month. The amount of such periodical payments lies exclusively within the discretion of the Court of Quarter Sessions: Com. *v.* Jones, 90 Pa. 431 (1879). It has already been observed that in such proceedings the husband was not adjudged guilty of wilful and malicious desertion, as charged by his wife; and it should now be observed that, furthermore, the said court did not in such adjudication find him guilty of having theretofore failed to maintain or support her. Such finding could have been made, although the orders of the court would, of course, have been confined to provisions for future maintenance: Keller *v.* Com., 71 Pa. 413 (1872). The record of the said proceedings shows that therein the said court, by its decree, merely fixed and directed the payment of a certain monthly sum to be made by him for her support and maintenance thereafter. The opinion in the said cause shows that the court duly considered the fact that the wife was then, and had been theretofore, arbitrarily withholding from her husband those services and duties to which, under the law and her marriage vows, he was justly entitled, and the further fact that she, as well as he, had an estate. The matter of her future maintenance was, therefore, squarely before that court for determination, and was the sole object of the proceedings: Demott *v.* Com., 64 Pa. 302 (1870); Carey *v.* Carey, 25 Pa. Superior Ct. 223 (1904); the amount and character of such maintenance lying wholly and exclusively within the jurisdiction and discretion of that court: Com. *v.* Jones, 90 Pa. 431 (1879). The record of said prosecution shows that said court duly discharged its judicial functions in the cause, fixing, in the suffixed decree, the amount of the payments to be made monthly thereafter, the same being deemed proper under the existing circumstances

2 D. & C.

and sufficient for her comfortable support and maintenance; the court, however, as to such allowance, expressly reserving to itself "the power of increasing it in the future if circumstances require it, or of reducing it if the circumstances justify." Of the propriety and sufficiency of such periodical payments, the said court, as has been said, had exclusive jurisdiction, so that neither this court nor any other tribunal has any jurisdictional right or power to interfere with, challenge or modify its findings or decrees in such matter. The said decree of the Court of Quarter Sessions, after its entry, remained unappealed from and unmodified, and the evidence shows that the monthly payments required thereby were made by the husband and accepted by the wife until the latter's death. Had the said wife been dissatisfied with the monthly allowance so fixed and awarded to her, or had her circumstances or conditions changed, justifying an increase thereof, she had redress to the Court of Quarter Sessions which had so aforesaid entered the decree and retained exclusive jurisdiction of the subject-matter. No evidence was produced at the hearing *sur* exception tending to show that, after the entry of such decree, she had made any application whatsoever to that court for increased allowance; consequently, we are justified in concluding that the said payments were sufficient for her comfortable support and maintenance and satisfactory to her, she preferring to abide by the same rather than return and take up cohabitation with him. Being so satisfactory to her, the sufficiency of such payments cannot here be attacked by her collateral relatives. They cannot here be permitted to attempt to do what the decedent herself did not in her lifetime see fit to undertake: Lawton's Estate, 266 Pa. 558 (1920). The fact that such payments were made by him under constraint of an order of court, and for which he had given surety, is, in our opinion, wholly immaterial and has no controlling effect upon the merits of the controversy. The facts and circumstances in the case at bar are very similar to those in Phillips's Estate, 271 Pa. 129 (1921), the opinion in which case affords us here much light, corroborating the conclusions we have herein reached as to the legal principles herein involved.

Consequently, we find that the collateral kinsmen have failed to establish that the exceptant either wilfully neglected or refused to provide for his wife (the decedent whose estate is before us) or wilfully and maliciously deserted her within the intendment of section 5 of the Intestate Act of June 7, 1917, P. L. 429 (which statute governs and controls the devolution of the said estate), and, accordingly, reach the conclusion that the said exception so filed by the surviving husband should be sustained and that the entire net balance aforesaid, to wit, $1993.37 (less the costs and expenses incident to the said exception and the trial thereunder), should be awarded and distributed to the exceptant as payment on account of his claim for the $5000 allowance *sec. leg.* as spouse her surviving.

### Decree.

And now, April 7, 1922, this matter came on to be heard on exception of John J. O'Connor, surviving husband of the decedent, filed *sec. reg.* to the adjudication and decree of this court, *sur* audit of the first and final account of Hugh Cairns, administrator, and testimony was thereupon taken and proofs submitted and the cause was thereupon argued by counsel; wherefore, upon due consideration thereof, it is ordered, adjudged and decreed that the said exception be and the same hereby is sustained, and that the subject-matter of the said exception, to wit, the said net balance, amounting to $1993.37 (less the office fees and costs incident to the adjudication of the said

exception, including the lawful and proper fees and mileage of the accountant's witnesses, which are hereby directed to be paid from said $1993.37), be paid by the accountant to the said John J. O'Connor, surviving husband of the said decedent, on account of his claim for a spouse's $5000 allowance *sec. leg.*                         From Harry D. Hamilton, Washington, Pa.